Milt Datsopoulos
J.R. Casillas
DATSOPOULOS, MacDONALD & LIND, P.C
201 West Maine Street, Suite 201
Missoula, Montana 59802
Phone: (406) 728-0810
Fax: (406) 543-0134
Email:   dcable@dmllaw.com
         ddaugherty@dmllaw.com

Attorneys for Plaintiff

FILED JAN 1 8 2012
SHIRLEY E. FAUST, CLERK
By /s/ Diane Overholtz
Deputy

MONTANA FOURTH JUDICIAL DISTRICT COURT
MISSOULA COUNTY

| TROY HAUERWAUS, | Cause No. DV-12-63 |
|---|---|
| Plaintiff, | Dept. No. 1 ED McLEAN |
| -vs- | COMPLAINT & JURY DEMAND |
| ALLIED WASTE SERVICES OF NORTH AMERICA, L.L.C., a Montana limited liability company; ABC CORPORATION 1-10, and JOHN DOE, A-J, | |
| Defendants. | |

**PARTIES**

1. At all times relevant the Plaintiff, Troy Hauerwaus ("Hauerwaus" or "Plaintiff"), was a resident of the State of Montana, residing in Missoula, Montana.

*COMPLAINT & JURY DEMAND*                                                                 *1*

2. The Defendant, Allied Waste Services of North America, L.L.C. ("Allied" or "Defendant") is a Montana limited liability company conducting business operations within the County of Missoula, State of Montana.

3. At all times relevant, Allied transacted business in the State of Montana, entered into contracts and owned, used or possessed property within said State, entered into contracts for services to be rendered and/or materials to be furnished within said State, employed residents of said State and otherwise availed itself of the rights and benefits of the State of Montana.

4. Defendants ABC Corporation 1-10 and Defendants John Doe A-J are entities or persons whose identity is as yet undetermined but who may have liability for Plaintiff's claims.

## FACTS COMMON TO ALL COUNTS

5. In or around October of 2009, Allied hired Plaintiff as its lead welder.

6. Pursuant to the terms of his employment, Plaintiff was paid a base hourly rate and received the value of fringe benefits including, but not limited to, health insurance coverage and retirement contributions.

7. Allied wrongfully terminated Plaintiff's employment on or about September 28, 2011. The reason provided by Allied for the termination was an alleged violation of Allied's Eye and Face Protection Safety Policy. However, this was not the honest reason for the termination, but rather a mere pretext for

the illegitimate purpose of discharging Plaintiff for violation of a written policy that Allied, through a course of conduct, selectively enforced or never adhered to.

8. During his employment with Allied, Plaintiff improved the welding shop through hard work and a commitment to excellence purportedly required of all Allied employees. For example, Plaintiff was the only shop employee to receive a safety award during his period of his employment.

9. Despite his commitment to quality, service and integrity during his employment, Plaintiff was consistently subjected to a hostile and abusive work environment of the kind and nature which created a working environment that was both objectively and subjectively offensive. The environment was one that a reasonable person can and did find hostile and abusive. The environment unreasonably interfered with Plaintiff's work performance and ability to do his job absent significant psychological interference.

10. Among other discriminatory practices, Allied is well known for engaging in wide spread nepotism, especially with respect to the selective enforcement of various company policies, including its Eye and Face Protection Safety Policy.

11. Allied's Eye and Face Protection Safety Policy provides:

> 1. Eye and/or face protection is provided and must meet ANSI Z87.1 and worn whenever welding, cutting, grinding, sanding, chipping, power washing, sorting refuse/recyclables or other operations where fine particles are produced. Eye protection also is issued and used during operations when

dust, splash or other hazards to the face and eyes are apparent or may be anticipated.

2. Safety glasses must be worn in all designated working areas of maintenance shops at all times unless in a clearly designated identifiable reception or walkway.

12. The foregoing policy is facially ambiguous in that it does not specify whether the welding hood/mask and safety glasses must be worn simultaneously at all times. For approximately two (2) years, Allied ratified Plaintiff's use of only one protection or the other and selectively enforced the policy depending on the employee violating the same. Patronage and favoritism was bestowed upon certain employees who violated the policy but were never written up or discharged.

13. Plaintiff's termination was a direct and proximate consequence of Allied's violation of and selective enforcement of its own safety policy and, accordingly, was not otherwise supported by good cause as required by Montana law.

**COUNT I: WRONGFUL DISCHARGE § 39-2-901, MCA, *et. seq.***

14. Comes now the Plaintiff and re-alleges and re-affirms all allegations contained in paragraphs one (1) through thirteen (13) above as if set forth herein.

15. At all times relevant while employed by Allied, Plaintiff performed his job consistent with and pursuant to training received and policies, protocols and procedures in place by Allied.

16. On or about September 28, 2011, Plaintiff was wrongfully terminated from his employment by Allied. The alleged reason for the termination was violation of a policy which Allied itself either selectively enforced or failed to adhere to altogether.

17. At the time of Plaintiff's discharge, he was not a probationary employee.

18. In discharging Plaintiff, Allied did not have good cause.

19. In discharging Plaintiff, Allied did not have a legitimate business reason for such action.

20. Plaintiff's discharge was wrongful insofar as it was pre-textual in nature, not predicated on good cause and because Allied's conduct was motivated by ulterior motives wholly unrelated to Plaintiff's job performance.

21. The reason provided by Allied for Plaintiff's termination was false and wholly lacked any basis in fact under the circumstances.

22. As a direct, immediate and proximate consequence of Plaintiff being wrongfully discharged by Allied, Plaintiff has incurred direct and consequential damages.

23. As a direct, immediate and proximate consequence of Plaintiff being wrongfully discharged by Allied, Plaintiff has sustained the loss of valuable and extensive fringe benefits.

## COUNT II: WRONGFUL INTERFERENCE
## WITH UNEMPLOYMENT BENEFITS

24. Comes now the Plaintiff and re-alleges and re-affirms all allegations contained in paragraphs one (1) through twenty-three (23) above as if set forth herein.

25. After his termination, Plaintiff filed for unemployment benefits with the Montana Department of Labor and Industry ("Department") – Unemployment Insurance Division.

26. Allied wrongfully and maliciously opposed Plaintiff's filing and interfered with his attempt to collect unemployment benefits. In doing so, Allied provided false and misleading information to the Department.

27. Allied's acts were wrongful, fraudulent and malicious.

28. As a direct, immediate and proximate consequence of Allied's wrongful acts, Plaintiff has incurred direct and consequential damages including, but not limited to, attorney's fees, costs, and delay in receiving unemployment benefits. All of these damages were a foreseeable consequence of Allied's wrongful acts.

WHEREFORE, Plaintiff demands judgment against Allied for:

A. Damages in amount to be proven at trial;

B. Interest at the highest rate provided for by law;

C. Costs;

D. Expenses;

E. Attorney's Fees; and,

F. For such other and further relief as this Honorable Court deems just.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

DATED this 16th day of January, 2012.

DATSOPOULOS, MacDONALD & LIND, P.C.

By: _____
Milt Datsopoulos
J.R. Casillas
Attorneys for Plaintiff